YELVERTON, Judge.
Following entry of a guilty plea, defendant appealed, under a Crosby reservation, an adverse ruling on her motion to suppress.

Facts:

On October 15, 1989, several deputies with the Rapides Parish Sheriffs Department Narcotics Task Force were conducting surveillance on the residence of Charlotte and Ken Pittman and monitoring a “bug” placed on a confidential informant who was inside the house. Before the informant went into the house, he told one of the officers that, once marijuana arrived at the house, it would be dispersed quickly. While monitoring the conversation, the deputies never heard any mention of narcotics transactions other than between the informant and Mrs. Pittman. Moreover, the transcript of the conversation at the house does not contain any mention of defendant’s name. However, it does reveal that the informant would be able to purchase 70 to 90 pounds of marijuana from Mrs. Pittman.
After being in the house for approximately 15 or 20 minutes, the confidential informant left in a vehicle that was intercepted by officers. The informant told them that there were “at least ten pounds sitting in there,” apparently referring to inside the house. He also said that there were three females, including Mrs. Pittman, and a male present in the house; again there was no mention of defendant’s name. The officers were also told by the informant that there was a “small black pickup truck, a gray Continental, and a yellow Cadillac” present at the residence. When asked if the people inside were going to be leaving with anything, the informant responded, “Uh yeah, I’m sure they will.”
After the informant left Mrs. Pittman’s house, some of the officers intercepted the black truck after it left the residence. The black truck was intercepted before defendant’s vehicle was. Officers Faglie and Branton searched the truck and found a green leafy substance in a grocery bag.
Detective James Yost testified that while he was conducting surveillance on the residence, he took down the license plate of a cream colored Lincoln and that of other vehicles parked at the residence. The officer saw no other cars coming and going from the residence while he was conducting surveillance. After the informant arrived at the house Yost monitored the discussions that took place inside the residence via the “body bug” on the informant. Later, the officer saw the Lincoln Continental leave the residence. He then radioed that a ’77 Lincoln Continental had just left the residence and gave the direction in which it was headed along with a description and license plate number of the vehicle. He further instructed the other officers to “shut the vehicle down if we ... uh ... did have probable cause to think that there was contraband in the vehicle.” Yost admitted that the only evidence that defendant was involved in a drug transaction was the fact that her car was parked outside the residence.
Deputy Ronnie Sellers testified that while he and Deputy John Ferguson were on patrol in their squad cars they observed and pulled over a Lincoln Continental that matched the description and license plate number of the car that Yost saw leave Mrs. Pittman’s residence. Deputy Sellers advised the driver, defendant herein, of her Miranda rights and told her she was being stopped because they believed she might be carrying drugs in the vehicle. Deputy Sellers also stated that both deputies asked her if she would mind if they searched the vehicle. Defendant verbally consented and signed a Waiver of Rights Form. Deputy Ferguson later searched the vehicle and found approximately one-half pound of marijuana on the floorboard. Defendant was placed under arrest.
*530 Ferguson elaborated, testifying that Deputy Sellers read defendant her Miranda rights and told her that she was not under arrest. He then asked her if there was anything in the vehicle that she wanted to tell them about. Defendant responded yes, that what they were looking for was in the car. She then led the officers “back there and showed it to” them. While on the highway, Deputy Ferguson saw no other vehicles that fit the description of the defendant’s vehicle.
After defendant was transported back to the police station, defendant signed a waiver of rights form while Officer Villard, Detective Bettevy, and Detective Faglie were present. Defendant was read the form and asked if she understood her rights. She was not promised anything in return for signing the form nor was she threatened in any way. After waiving her rights, she gave a video statement.

Assignment of Error

Defendant argues that the trial court erred in denying her Motion to Suppress the seized marijuana because the police had no probable cause to stop her vehicle. She further argues that since it was an illegal detention, any subsequent consent can only be assumed to be involuntary.
The right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by La.C.Cr.P. art. 215.1, as well as both the federal and state constitutions. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), State v. Chopin, 372 So.2d 1222 (La.1979). The right to make an investigatory stop must be based upon reasonable cause sufficient to cause them to suspect the individual of past, present, or imminent criminal conduct. State v. Andrishok, 434 So.2d 389 (La.1983). It is axiomatic that reasonable cause for an investigatory stop is something less than probable cause and must be determined under the facts of each case by whether the officer had sufficient knowledge of the facts and circumstances to justify an infringement on the individual’s right to be free from government interference. State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984).
We find, in the instant case, that the officers had reasonable cause to make an investigatory stop. They were told by the informant before going into the house that when the marijuana arrived in the house it would be dispersed as quickly as possible. Once the informant was inside the house, the officers learned via the “body bug” that a large drug deal was taking place. After the informant left the house, the police learned from him that there were ten or more pounds of marijuana inside the house. Finally, the informant told the officers that the three people inside the house would be leaving with something, undoubtedly marijuana, soon.
After conducting surveillance on the house and monitoring the “body bug”, Detective Yost dispatched a description of a 1977 Lincoln Continental bearing a particular license plate number to officers in the area. The detective instructed the other officers to stop this vehicle believing it would be carrying drugs. Subsequently, a black truck that had just left the residence was stopped and marijuana was discovered inside it. Deputies Sellers and Ferguson were justified in stopping defendant’s car.
We also conclude that defendant validly consented to the search of the car. A valid consent to search is a well recognized exception to the requirement of a search warrant. State v. Owen, 453 So.2d 1202 (La.1984); State v. Mitchell, 360 So.2d 189 (La.1978). When the state seeks to rely upon consent to justify a warrantless search, it must demonstrate that the consent was given freely and voluntarily without coercion. State v. Wilson, 467 So.2d 503 (La.1985), cert. denied 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 246. The voluntariness of the defendant’s consent is a question of fact to be determined by the trial judge under the facts and circumstances surrounding each case and the trial judge’s factual determinations are entitled to great weight on appeal. State v. Ossey, 446 So.2d 280 (La.1984), cert. denied 469 U.S. 916, 105 S.Ct. 293, 83 L.Ed.2d 228.
*531 In the instant case, the testimony indicates that Deputy Sellers advised defendant that she was being stopped because they believed she might be carrying drugs in the car, he advised her of her Miranda rights, and she signed a waiver of rights form. Deputy Sellers told her she was not under arrest but wanted to know if there was anything in the vehicle that she wanted to tell them about. Defendant responded yes, that what they were looking for was in the car. She then led the officers “back there and showed it to” them. Defendant was then placed under arrest and reread her Miranda rights after Deputy Ferguson found approximately one-half pound of marijuana on the floorboard. The detention was not illegal and there is nothing to indicate that defendant’s consent was coerced. The search is valid.
The trial court did not err in denying defendant’s Motion to Suppress.
AFFIRMED.